Filed     26-CI-002831     04/02/2026     David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
04/06/2026 12:26:54 PM
LKLICHTENBERGER@GMAIL.C

AOC-104     Doc. Code: CCCS
Rev. 1-24
Page 1 of 1

Commonwealth of Kentucky
Court of Justice     www.kycourts.gov

**CIVIL CASE COVER SHEET**

Case No.: _____
Court: _____
County: [            ]
Division: _____

PLAINTIFF/PETITIONER *OR* IN RE/IN THE INTEREST OF:
NORTON HEALTHCARE, INC.

*Hand Delivered*
*4-15-26  3:02 pm*

DEFENDANT/RESPONDENT, *if applicable:*
BLUE CROSS BLUE SHIELD OF MICHIGAN MUTUAL INSURANCE COMPANY; and DOES 1-25, INCLUSIVE

☐ Check here if **YOU DO NOT HAVE AN ATTORNEY** and are **REPRESENTING YOURSELF**
(a Self-Represented *[Pro Se]* Litigant)

**Nature of the Case:**     Place a "X" to the left of the *ONE* case category that most accurately describes your *PRIMARY CASE*. If you are making more than one type of claim, check the one that you consider most important.

**DOMESTIC RELATIONS** *eFile Only
☐ Dissolution/Divorce with Children (DISSOC)
☐ Dissolution/Divorce without Children (DISSO)
☐ Paternity (PA)
☐ Custody (CUSTO)
☐ Child Support IV-D (SUPIV)
☐ Child Support Private Non IV-D (SUPPRI)
☐ URESA/UIFSA (UR)
☐ Visitation/Parenting Time (VISIT)
☐ Voluntary Termination of Parental Rights (VTPR)
☐ Involuntary Termination of Parental Rights (ITPR)
☐ Adoption (ADPT)
☐ Other: (DFOTH) *eFile not required

**PROBATE / ESTATE** *eFile Only
☐ Guardianship-Adult (GCADLT) *eFile not required
☐ Guardianship-Juvenile (GCJUV)
☐ Adult Conservatorship - Trusteeship (CONSVA)
☐ Juvenile Conservatorship - Trusteeship (CONSVJ)
☐ Probate-Testate (with a will) (PBTEST)
☐ Probate-Intestate (without a will) (PBINT)
☐ Petition to Dispense with Administration (PBDIS)
☐ Name Change (NC)
☐ Will Contest (WC)
☐ Other: (PBOTH) *eFile not required

**TORT** (Injury) *eFile Only
☐ Automobile (AUTO)
☐ Intentional (INTENT)
☐ Malpractice-Medical (MDML)
☐ Malpractice-Other (MLOTH)
_____
☐ Premises Liability (PREM)
☐ Product Liability (PROD)
☐ Property Damage (PD)
☐ Slander/Libel/Defamation (SLAND)
☐ Other: (PIOTH)
_____

**REAL PROPERTY**
☐ Abandoned and Blighted Property Conservatorship (PC) *eFile Only
☐ Property Rights (PR) *eFile Only
☐ Condemnation (DOMAIN)
☐ Forcible Detainer - Eviction (FD) *eFile Only
☐ Forcible Entry (FENTRY)
☐ Foreclosure (FCL) *eFile Only
☐ Other: (COOTH) *eFile Only
_____

**EMPLOYMENT** *eFile Only
☐ Employment-Discrimination (DSCR)
☐ Employment-Other (DISPU)

**CONSUMER** *eFile Only
☐ Seller Consumer Goods (DEBTG)
☐ Seller Consumer Services (DEBTS)
☐ Buyer Consumer Goods (BUYERG)
☐ Buyer Consumer Services (BUYERS)
☐ Credit Card Debt (CREDIT)
☐ Fraud (FRAUD)
☐ Other: (COOTH)
_____

**APPEALS**
☐ Appeal from Administrative Agency (AB)
☐ Appeal from District Court (XI)
☐ Other: (OTH)
_____

**MISC CIVIL**
☐ Constitutional Challenge (CCHAL)
☐ Habeas Corpus (HABEAS)
☐ Non-Domestic Relations Restraining Order (IP)
☐ Tax (TAX)
☐ Writs (WRITS)
☑ Other: (OTH) CONTRACT

**BUSINESS/COMMERCIAL** *eFile Only
☐ Business Tort (BCPI)
☐ Statutory Action (BCSA)
☐ Business Contract Dispute (BCCO)
☐ Other: (BCOTH)

Presiding Judge: HON. TRACY E. DAVIS (630452)

CCCS : 000001 of 000001

Filed     26-CI-002831     04/02/2026     David L. Nicholson, Jefferson Circuit Clerk

**Print Form**     **Reset Form**

Filed    26-CI-002831    04/02/2026    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, KENTUCKY
### LAW DIVISION

| | | |
|---|---|---|
| NORTON HEALTHCARE, INC. | ) | |
| Plaintiff, | ) ) ) | Case No. XXXXX |
| v. | ) ) ) | |
| BLUE CROSS BLUE SHIELD OF MICHIGAN MUTUAL INSURANCE COMPANY; and DOES 1 THROUGH 25, INCLUSIVE, | ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) ) | |

*Presiding Judge: HON. TRACY E. DAVIS (630452)*

### PLAINTIFF NORTON HEALTHCARE, INC.'S
### COMPLAINT AT LAW

1. Plaintiff, NORTON HEALTHCARE, INC. (hereinafter "Plaintiff" or "NORTON"), by and through its attorneys, LAW OFFICES OF STEPHENSON, ACQUISTO & COLMAN, for its Complaint at Law ("Complaint") against BLUE CROSS BLUE SHIELD OF MICHIGAN MUTUAL INSURANCE COMPANY; and DOES 1 THROUGH 25, INCLUSIVE, (hereinafter "Defendant" or "BCBSMI"), and DOES 1 THROUGH 25, INCLUSIVE, upon personal information as to their own activities and upon information and belief as to the activities of others and all other matters, and states as follows:

### INTRODUCTION

2. This is an action against BCBSMI for breach of implied-in-fact contract and *quantum meruit* arising from a business relationship between NORTON and BCBSMI. By this action, NORTON seeks compensatory damages, interest, and costs.

*COM : 000001 of 000026*

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

## PARTIES

3.    Plaintiff NORTON is a not-for-profit Kentucky corporation organized and existing pursuant to the laws of the State of Kentucky. NORTON, through its regional health network and subsidiaries, has its principal place of operation in the City of Louisville, County of Jefferson, Kentucky. NORTON provided medical care to Patients (as such term is defined herein), who were BCBSMI beneficiaries when such medical care was provided.

4.    BCBSMI is a domestic insurance company, incorporated in the state of Michigan with its principal office and registered agent located at 600 East Lafayette Boulevard, Suite 1929 Detroit Michigan.

5.    NORTON is unaware of the true names and capacities, whether corporate, associate, individual, partnership or otherwise of defendants DOES 1 through 25, inclusive, and therefore sues such defendants by such fictitious names. NORTON will seek leave of the Court to amend this Complaint to allege its true names and capacities when ascertained.

6.    BCBSMI and Does 1 through 25, inclusive, shall be collectively referred to as "BCBSMI" or "Defendants."

7.    Defendants, each of them, at all relevant times, have transacted business in the State of Kentucky. The violations alleged within this Complaint have been and are being carried out in the State of Kentucky.

8.    NORTON is informed, believes and thereon alleges that at all relevant times each of the Defendants, including the defendants named "Doe," was and is the agent, employee, employer, joint venturer, representative, alter ego, subsidiary and/or partner of one or more of the other defendants, and was, in performing the acts complained of herein, acting within the scope of

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000002 of 000026

Filed                26-CI-002831    04/02/2026          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

such agency, employment, joint venture, or partnership authority, and/or is in some other way responsible for the acts of one or more of the other defendants.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over this matter pursuant to Kentucky Revised Statutes (KRS) § 23A.010, which grants the Jefferson Circuit Court general jurisdiction over all civil matters not exclusively assigned to another court. This Court has personal jurisdiction over the Defendant pursuant to KRS § 454.210, as the Defendant conducts business within the Commonwealth, including Jefferson County.

10.    Venue is proper in Jefferson County, Kentucky pursuant to KRS § 452.450, as the dispute which is the subject of this action was entered into in Jefferson County, and was to be performed in whole or in part in Jefferson County.

## FACTUAL BACKGROUND

11.    NORTON, between the dates of May 8, 2023, and January 30, 2025, provided medically necessary treatment to the individuals identified on the spreadsheet attached as Exhibit A[1] to this Complaint (and which is incorporated herein by this reference as though set forth in full) (the "Patients") totaling forty-three (43) claims. On the dates of service set forth in Ex. A ("the Dates of Service"), NORTON rendered medically necessary services, supplies and/or equipment to Patients until Patients became stable for discharge from NORTON.

12.    NORTON is informed and believes and thereon alleges that at all relevant times Patients were enrollees and/or beneficiaries of health plans sponsored, financed, administered, and/or funded by BCBSMI.

---

[1] NORTON has limited disclosure of patient identification here pursuant to the privacy provisions of the Health Insurance Portability & Accountability Act ("HIPAA"), 42 U.S.C. §§ 1320 *et seq.* A more detailed Exhibit can be provided upon entry of a Court ordered, HIPAA compliant protective order.

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000003 of 000026

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

13.     NORTON is informed, believes and thereon alleges BCBSMI is financially responsible for the medically necessary services, supplies, and/or equipment (including, but not limited to, emergency care) rendered to the Patients on the Dates of Service.

14.     Prior to and during the dates of service set forth in Ex. A, NORTON sought authorization for treatment from BCBSMI. BCBSMI gave authorization reference numbers, represented that authorization was pending, and/or requested supporting clinical medical records which NORTON provided.

15.     Insurance companies like BCBSMI receive millions of dollars in premiums collected from their clients and insureds in exchange for the promise of making benefit payments to healthcare providers for emergency and other medical services rendered to their members.

16.     BCBSMI received premium payments for Patients' enrollment and coverage in BCBSMI's respective health plans.

17.     BCBSMI accepted the services NORTON provided to Patients as demonstrated by acts including but not exclusive to issuing authorizations and collection of premiums.

18.     NORTON's usual and customary charges for the medically necessary services, supplies and/or equipment rendered to Patients amounted to $2,463,566.93.

19.     NORTON timely and properly submitted the bills containing said charges for the medically necessary services, supplies, and/or equipment rendered to Patients to BCBSMI for payment.

20.     Rather than properly and fully pay NORTON for the medically necessary services, supplies, and/or equipment NORTON rendered to the Patients, BCBSMI underpaid, issuing payments of $76,156.14. To date, BCBSMI owes NORTON no less than $374,359.60. Ex. A.

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000004 of 000026

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

21. BCBSMI failed to pay fully and properly NORTON for the medically necessary services, supplies, and/or equipment rendered to Patients, despite demands thereof.

22. BCBSMI has refused, despite NORTON's repeated demands, to fully and properly pay NORTON the reasonable and customary value of the medical care rendered to BCBSMI's beneficiaries as specified in Ex. A. BCBSMI has unjustly benefitted by not paying fully NORTON for the reasonable value of such services.

23. BCBSMI unjustly benefitted by not paying fully NORTON for the reasonable value of such services. BCBSMI promised its beneficiaries (including Patients) that it would pay medical providers who provided emergency and necessary medical treatment to those beneficiaries in exchange for Patients' premiums, collected such premiums and then refused despite demands to fully and properly pay NORTON the reasonable and customary value of the medical care rendered to BCBSMI's beneficiaries as specified in Ex. A. BCBSMI accepted the services NORTON provided to Patients as demonstrated by acts including but not exclusive to issuing authorizations and collection of premiums.

24. BCBSMI further unjustly and directly benefitted when it caused NORTON to treat its beneficiaries, Patients, thus improving BCBSMI's patient-population risk pool as Patient was now healthier and less of a cost exposure risk to BCBSMI's insurance funds and allowing BCBSMI's profits to continue with further guarantee that a healthier and still living Patient would ensure that the BCBSMI would be allowed to collect future premiums for Patients' enrollment in BCBSMI's health plan.

25. BCBSMI further unjustly and directly benefited when it caused NORTON to treat its beneficiaries, Patients, in the following ways:

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000005 of 000026

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

a) Improved Health Outcomes – BCBSMI has a vested interest in keeping their enrollees, like Patients, healthy, as healthier individuals require less medical care and incur fewer costs. By encouraging their enrollees, like Patients, to seek medical care when needed, including hospitalization, when necessary, BCBSMI helped prevent Patients' illness from becoming more serious and costly for BCBSMI.

b) Better Customer satisfaction – when Patients received quality care at NORTON, Patients were more satisfied with their health insurance coverage which led to increased loyalty and retention rates for BCBSMI.

c) Increased Market Share – by offering competitive coverage that includes access to high-quality hospitals, like NORTON, BCBSMI was able to attract new customers and retain existing ones. This helped them gain a larger share of the market which led to increased profits and better bargaining power with healthcare providers.

d) Cost Savings – with an improved health outcome of Patients, BCBSMI saved money by avoiding further future costly treatments and is therefore able to keep premiums lower for their customers, further increasing BCBSMI's attractiveness and competitiveness in expanding its patient-pool.

26.    As a direct and proximate result of BCBSMI's wrongful conduct, NORTON has suffered damages in an amount to be proven at trial but not less than the sum of $374,359.60 exclusive of interest.

*Importance of Insurance Cards*

27.    BCBSMI accepted the services NORTON provided to Patients as demonstrated by acts including but not exclusive to issuing insurance cards, authorizations and collection of premiums.

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000006 of 000026

Filed    26-CI-002831    04/02/2026    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

28.    Prior to the dates of service for each Patient, BCBSMI issued identification cards to Patients.    On information and belief, those identifications cards contained the following including but not limited to:

a)    Copay Amounts for the Patient – including a percentage of amount patient owes for services after deductible, (i.e. $0, 15%, 25%, 35%);

b)    Deductible Amounts for the Patient;

c)    Instructions to the Patient to call 911 or go to the nearest Emergency Room (ER) in an emergency;

d)    Representation that "Emergency services given by a provider not in the plans network will be covered without prior authorization.";

e)    A suitcase logo which according to many BCBS websites explain that the suitcase logo means "you can get in-network care when traveling … from a hospital or doctor who participates with the local Blue Cross and/or Blue Shield Plan" and according to Blue Cross Blue Shield of Michigan: Understanding member ID cards for 2025 brochure[2] "[i]ndicates coverage by BlueCard® while traveling outside of Michigan for commercial members."

f)    Instructions of where and how to bill BCBSMI for the services provided.

29.    BCBSMI instructed Patients to present these identifications cards to the provider; in this case, NORTON.

30.    BCBSMI informed under the Prudent Layperson Standard which established that emergency room visits would be covered and paid for by BCBSMI if a reasonable person would think it's an emergency. *See* 42 U.S.C. §675.

---

[2] https://www.bcbsm.com/amslibs/content/dam/public/providers/documents/2025/bcbsm-member-id-card-brochure.pdf

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

31.     NORTON knew, was aware of, and understood this industry custom and practice including that an insurer, like BCBSMI could not and would not refuse coverage for a valid emergency under the Prudent Layperson Standard. BCBSMI's Further, the Blue Cross Blue Shield of Michigan: Understanding member ID cards for 2025 brochure details travel and guest coverage including representation that "BlueCard® is a national program from the Blue Cross and Blue Shield Association that gives Blue Cross and Blue Care Network commercial members easy and convenient access to health care services while traveling or living outside of their BCBS home state."[3]

32.     BCBSMI knew, was aware of and understood that NORTON must provide care that is required under EMTALA, specifically the following;

a)    Medical Screening Examination (MSE) whereby NORTON must provide an appropriate medical screening to any person who comes to the emergency room and requests examination or treatment for a medical condition to determine whether an emergency medical condition (EMC) exists. The MSE must be performed without delay and regard to ability to pay or insurance status. The screening must be the same standard given to any patient with similar symptoms.

b)    Stabilization Requirement - If an EMC is found, NORTON must provide necessary treatment to stabilize the patient. Stabilization means no material deterioration is likely during transfer/ discharge.

c)    Appropriate Transfer - If NORTON cannot stabilize the patient it may transfer to another facility only if:

---

[3] https://www.bcbsm.com/amslibs/content/dam/public/providers/documents/2025/bcbsm-member-id-card-brochure.pdf

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000008 of 000026

Filed    26-CI-002831    04/02/2026    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.(

i)    The receiving facility has capacity and agrees to accept the patient; and

ii)   The transfer is medically appropriate

d)   Transfers require written physician certification that benefits outweigh the risks

33.    BCBSMI thus anticipated that NORTON would submit a claim to BCBSMI that BCBSMI is legally obligated to review and often pay NORTON.

*Meeting of the Minds Through Communication and Billing*

34.    During the dates of services alleged in Ex.A., NORTON and BCBSMI engaged in real-time communications during the stay, including but not limited to the following:

a) Pre-Authorization for Certain Services: While most emergency care cannot require prior authorization, once the Patients were stabilized, further care (admissions, surgeries, transfers) may require insurer approval;

b) Case Management Calls: BCBSMI contacted NORTONS's case manager to discuss discharge planning or preferred follow-up care;

35.    This is a mini-agreement within the larger framework of providing the care for the patient.

*Electronic Claim & Payment Systems (Functional Operational Agreement Through Industry Custom and Practice and Standard Billing Practices)*

36.    NORTON submitted the claims electronically in BCBSMI's required format. This use of the BCBSMI's claim submission systems, including but not limited to online portals, and adherence of BCBSMI's claim billing rules is itself part of an ongoing "meeting of the minds" about how healthcare business is done.

37.    The implied operational agreement between NORTON and BCBSMI in the ER setting is a tacit but real "meeting of the minds" because both sides, by the totality of their conduct, demonstrate mutual understanding and acceptance of how claims will be handled after the care is

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000009 of 000026

Filed          26-CI-002831    04/02/2026          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

delivered.

38.     Even before the Patients arrived at NORTON, both NORTON and BCBSMI operated within an established administrative framework that governed the following billing practices:

      i)     Claim format (electronic data interchange standards like ANSI X12 837)

      ii)    Coding requirements (ICD-10, CPT, HCPCS)

      iii)   Supporting documentation (ER notes, test results, operative reports)

      iv)   Payment remittance format (ANSI 835 EDI or equivalent)

      v)    Appeal procedures if the claim is denied

39.     Both parties knew these operational rules and intended to follow them when NORTON delivered care and later sought payment.

### *Mutual Consideration*

40.     NORTON's consideration: NORTON agreed to submit the claims in BCBSMI's required format, follow the coding guidelines, did not require upfront payment of the treatments, and abided by BCBSMI's claim review process.

41.     BCBSMI's consideration: BCBSMI agreed to process the claims in good faith according to those same operational rules and remit payment (or issue a lawful denial) within the agreed or legally required timeframe.

42.     NORTON, by treating the Patients and later submitting a claim in BCBSMI's prescribed way, essentially offered to exchange compliance with the rules for payment.

43.     BCBSMI, by processing the claims in that format rather than rejecting it outright for noncompliance, accepts that operational arrangement.

44.     Both parties knew what the billing rules were and acted as though they were bound

44170 – NORTON HEALTHCARE v. BCBSMI          10          COMPLAINT AT LAW
Filed          26-CI-002831    04/02/2026          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.(

by them.

45.    NORTON performed by sending the claims; BCBSMI performed by adjudicating and paying (or denying) the claims.

46.    NORTON and BCBSMI followed the same operational "rulebook," which was never separately negotiated for these Patients but is universally understood between them.

47.    The meeting of the minds occurred because both Parties, without explicit negotiation at the moment, choose to operate within that same established administrative system with mutual expectations of performance and payment.

### *Industry Custom & Prior History*

48.    Prior to the dates of service, a pattern of behavior had developed that was almost automatic between BCBSMI and NORTON:

   a)    NORTON's registration staff collected insurance details on intake;

   b)    NORTON sent an admission notification or real-time eligibility check to the BCBSMI; and,

   c)    BCBSMI sent back a verification of coverage.

49.    Also, upon the issuance of verification of coverage, hospital staff requested authorization for treatment, and BCBSMI either gave an authorization number, requested medical records, or indicated that authorization was not needed for the treatment (as indicated on the insurance cards BCBSMI created and provided for Patients).

50.    By continuing treatment with this knowledge, both parties acted under an implied understanding of payment and care responsibilities.

51.    BCBSMI, though indicating that Patients had verified benefits and coverage, understood that if coverage was established for a patient's treatment, under the industry custom

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000011 of 000026

Filed        26-CI-002831    04/02/2026        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

and practice, NORTON understood that a confirmation of coverage meant that those services would be paid by BCBSMI.

52.    The reason, in part, for why NORTON interpreted the verification of benefit and establishment of a service as "covered" is that 1) BCBSMI only gave out authorization numbers or indicated authorization was not needed when BCBSMI knew what services were being provided and 2) BCBSMI gave authorizations or indicated none was needed with the intent to induce NORTON to provide services to the BCBSMI' members.

53.    In addition, prior course of conduct by BCBSMI included NORTON submitting claims to NORTON and in response, BCBSMI would properly pay the usual and customary value of those claims. From January 1, 2017 to December 31, 2025, NORTON has billed numerous claims and BCBSMI has satisfactorily paid on a number of claims submitted by NORTON in the near identical manner and method as the facts alleged herein.

54.    BCBSMI knew that NORTON would not provide services to the BCBSMI's members gratuitously.

55.    BCBSMI's provisions of authorization or assurance that authorization was not required was done so only after it had determined that BCBSMI would assume responsibility for the reimbursement of the claims.

56.    BCBSMI promised its beneficiaries (including Patients) that it would pay medical providers who provided emergency and necessary medical treatment to those beneficiaries in exchange for Patients' premiums and collected such premiums.

57.    BCBSMI has refused, despite NORTON's repeated demands, to fully and properly pay NORTON the reasonable and customary value of the medical care rendered to BCBSMI's beneficiaries as specified in Ex. A. BCBSMI has unjustly benefitted by not paying fully NORTON

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000012 of 000026

Filed        26-CI-002831    04/02/2026              David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

for the reasonable value of such services.

### *Benefits Provided To and Retained Unjustly By BCBSMI*

58.    BCBSMI further unjustly and directly benefitted when it caused NORTON to treat its beneficiaries, Patients, thus improving BCBSMI's patient-population risk pool as Patient was now healthier and less of a cost exposure risk to BCBSMI's insurance funds and allowing BCBSMI's profits to continue with further guarantee that a healthier and still living Patient would ensure that the BCBSMI would be allowed to collect future premiums for Patients' enrollment in BCBSMI's health plan.

59.    BCBSMI further unjustly and directly benefited when it caused NORTON to treat its beneficiaries, Patients, in the following ways:

60.    **Improved Health Outcomes** -- BCBSMI has a vested interest in keeping their enrollees, like Patients, healthy, as healthier individuals require less medical care and incur fewer costs. By encouraging their enrollees, like Patients, to seek medical care when needed, including hospitalization, when necessary, BCBSMI helped prevent Patients' illness from becoming more serious and costly for BCBSMI.  Further, prompt care helped Patients return to work sooner, keeping them as a premium-paying policyholder and made claims more predictable. The treatment provided prevented relatively small medical events from becoming "catastrophic claims" that hit BCBSMI's stop-loss or reinsurance layers.

61.    **Better Customer Satisfaction** -- When Patients received quality care at NORTON, Patients were more satisfied with their health insurance coverage which led to increased loyalty and retention rates for BCBSMI.

62.    **Increased Market Share** -- By offering competitive coverage that includes access to high-quality hospitals, like NORTON, BCBSMI was able to attract new customers and retain

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000013 of 000026

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

existing ones. This helped them gain a larger share of the market which led to increased profits and better bargaining power with healthcare providers. In marketing, BCBSMI was able to promote that they provide robust emergency coverage, making their plans more attractive to employers and individuals.

63.    **Cost Savings** – With an improved health outcome of Patients, BCBSMI saved money by avoiding further future costly treatments and is therefore able to keep premiums lower for their customers, further increasing BCBSMI's attractiveness and competitiveness in expanding its patient-pool.

64.    **Cost Control via Contracted/ or Usual and Customary Rates** – When NORTON was in-network or had a single case rate agreement, BCBSMI paid the negotiated rate, which was typically lower than NORTON's billed charges. Even when NORTON was out of network, BCBSMI still had leverage to pay "usual and customary" or statutory rates rather than full charges (e.g., state balance-billing laws, Medicare-based payment caps in certain contexts).

65.    **Cost Avoidance from Downstream Care** – Early ER intervention prevented costlier care later, e.g., preventing ICU admission, severe complications, or prolonged disability.

66.    **Reduced Need for Post-Emergency Litigation or Liability** – NORTON's prompt treatment lowered the chance that Patients (or their attorneys) could claim BCBSMI delayed or denied urgent care, which could have lead to costly lawsuits or bad-faith claims against BCBSMI.

67.    **Regulatory & Legal Compliance Benefits** – BCBSMI was under implied obligations under EMTALA and direct obligations under the Prudent Layperson Standard (federal and Nevada state laws) that required BCBSMI to provide coverage for conditions a reasonable person would think need immediate attention.

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

68.   **Avoidance of Regulatory Penalties** – Inducing NORTON to provide care to Patients that met legal standards helped BCBSMI avoid fines or corrective action from state insurance departments.

69.   **Defense Against "Bad Faith" Accusations** – Had a Patient suffered harm due to denial or delay of medical services, BCBSMI could risk major reputational and legal damage. BCBSMI's inducement of NORTON to provide care to Patients preemptively limited that exposure.

70.   **Claims Management & Cost-Sharing Leverage** – After Patient's were discharged, BCBSMI was able to channel Patients into in-network follow-up care, keeping future costs down.

*Claims At Issue*

71.   Despite NORTONs' proper submission of claims for reimbursement, BCBSMI has failed to properly pay NORTON for medical services supplies and/or equipment rendered to the Patients.

72.   Prior to admission and/or following stabilization in NORTONs' emergency department, NORTON contacted BCBSMI and/or its agents to ascertain whether or not BCBSMI was responsible for the costs associated with the medically necessary services, supplies and/or equipment rendered to patients.  In response, BCBSMI Plan's agent verified to NORTON the relevant insurance verification and insurance coverage eligibility information for Patients under BCBSMI's health plan and per its insurance cards indicated that authorization was not required or provided an authorization number.

73.   At all relevant times, BCBSMI's Plan held itself out to be the responsible payor for the services provided to patients.  BCBSMI gave authorization reference numbers or indicated no

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000015 of 000026

Filed        26-CI-002831    04/02/2026        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

authorization was needed and approved the medically necessary services rendered to Patients. In fact, BCBSMI paid a portion of the billing for all claims being made in this Complaint. BCBSMI was aware and knew that they are responsible for paying for each of their insureds.

74.     Rather than properly and fully pay NORTON for the medically necessary services, supplies, and/or equipment NORTON rendered to the Patients, BCBSMI underpaid, issuing payments of $76,156.14. To date, BCBSMI owes NORTON no less than $374,359.60. Ex. A.

**COUNT I – BREACH OF IMPLIED-IN-FACT CONTRACT**
(Against Defendant BCBSMI and DOES 1 through 25, inclusive)

75.     NORTON incorporates by reference and re-alleges paragraphs 1-74 of this Complaint here as though set forth in full.

76.     NORTON and Blue Cross of Kentucky ("BCBSKY"), a non-party to this action, have a written contract and that contract informs and guides NORTON'S relationships with other entities including out-of-state Blue Cross Blue Shield Association member companies (such as BCBSMI) (e.g. Defendant (the "Contract").

77.     Although BCBSMI was not a signatory to or obligee of the Contract, the Contract provided that non-BCBSKY Blue Cards, including BCBSMI would receive in-network rates. In turn, NORTON would accept this lesser, discounted monies received from BCBSMI as payment in full that were made at the in-network rates found within the Contract.

78.     All BCBSMI needed do to take advantage of such medical treatment and discounted rates on behalf of its members/beneficiaries was to issue a "Blue Card" program identification card. The members/beneficiaries could then present their "Blue Card" program identification card to NORTON at admission, which signaled to NORTON that it must accept payment at the in-network rates pursuant to the terms of the Contract.

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

79.    In this way, by conduct alone and with no express agreement between them, an implied-in-fact contract arose between NORTON and BCBSMI each time one of the Patients presented to NORTON their BCBS-issued "Blue Card" program identification card and/or otherwise identified themself as being a member/beneficiary of a health plan financed, sponsored, and/or administered by a member company of the national Blue Cross Blue Shield Association; and/or BCBSMI tendered and NORTON accepted monies as payment in full at the in-network rates.

80.    Each of the Patients specified in Exhibit A presented a "Blue Card" program identification card issued by BCBSMI and/or otherwise identified themself as belonging to a health plan financed, sponsored, and/or administered by BCBSMI at the time of their hospital stay at NORTON on the Dates of Service.

81.    Accordingly, each time one of the Patients sought medical treatment at NORTON and so identified themself, an implied-in-fact contract arose in which NORTON agreed to render to that Patient all medically necessary services, supplies, and/or equipment needed by that individual and secondarily agreed to accept as payment, in full, monies received from BCBSMI that were in conformance to the discounted rates found in the Contract. In return, BCBSMI agreed to pay for such care, albeit at the appropriate discounted rate regarding such care.

82.    NORTON's usual and customary charges for rendering the medically necessary services, supplies, and/or equipment to the Patients set forth in Exhibit A, amounted to $2,463,566.93. At the rates found within the Contract, BCBSMI should have paid an aggregate amount of $450,515.74. However, BCBSMI only paid $76,156.14, leaving a deficit of $374,359.60 which amounted to a breach of its implied-in-fact contracts with NORTON.

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000017 of 000026

Filed    26-CI-002831    04/02/2026    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

83.    No express written contract between BCBSMI and NORTON existed to prescribe payment for the medically necessary services, supplies, and/or equipment rendered to Patients and NORTON did not perform those services gratuitously. Rather, BCBSMI knew and understood that NORTON rendered such treatment with the expectation of being paid the discounted rates under the Contract and through the Blue Card program.

84.    Prior to the treatment rendered by NORTON, through industry custom and practice, BCBSMI impliedly agreed, promissorily impliedly expressed and understood that NORTON would render medically necessary care to BCBSMI beneficiaries, submit bills for such care to BCBSMI, and that BCBSMI would pay the discounted rates under the Contract to NORTON for the necessary medical treatment rendered to Patients, rather than Patients themselves (except for co-payments, deductibles, and co-insurance amounts, in any).

85.    Specifically, prior to the dates that NORTON admitted Patients to its facilities for medical services, NORTON contacted BCBSMI to verify Patients' healthcare eligibility under a BCBSMI health plan, to obtain authorization from BCBSMI for the medical services rendered and to be rendered, and to establish its right to be paid by BCBSMI the discounted rates under the Contract for such care. In response, BCBSMI represented that Patients were beneficiaries of one of BCBSMI's health plans, provided the authorization numbers incorporated in Ex A, and approved admissions of the Patients.

86.    At no time did BCBSMI represent that it would not pay the discounted rates under the Contract to NORTON for the necessary medical treatment rendered to Patients.

87.    Through NORTON's treating the Patients, NORTON's initiating contact with BCBSMI as described above, and BCBSMI's instructing the Patients to present their BCBSMI-issued "Blue Card" membership identification to NORTON, Plaintiff and Defendant entered into

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000018 of 000026

.Filed    26-CI-002831    04/02/2026    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

an implied-in-fact contract. The Contract was also formed through industry custom and practice, as well as Plaintiff and Defendant's prior and on-going course of conduct *vis-à-vis* the "Blue Card" program. Prior course of conduct included, among other things:

a) BCBSMI's issuance of identification cards to Patients;

b) BCBSMI's instructing Patients to present such identification cards to medical providers so as to give assurances to those medical providers that such care would be paid for;

c) NORTON communicating with BCBSMI to ask for authorizations to render medical care to Patients and BCBSMI issuing authorizations to NORTON for such care;

d) BCBSMI communicating to NORTON the medical eligibility benefits for Patients without advising NORTON that BCBSMI would not make full payment of the discounted rates under the Contract for the services to be provided to Patients;

c) BCBSMI sending written approvals to NORTON for the specified medical services for Patients;

f) BCBSMI requesting that NORTON send BCBSMI clinical information and medical records.

88. In addition, prior course of conduct by BCBSMI included NORTON submitting claims to BCBSMI and in response, BCBSMI would properly pay the discounted rates under the Contract for those claims. Over the last five (5) years, NORTON has billed numerous claims and BCBSMI has satisfactorily paid on a number of claims submitted by NORTON in the near identical manner and method as the facts alleged herein.

89. BCBSMI directly and deliberately benefited from those services by prompting, through its words and prior and ongoing conduct, and through the custom and practice in the healthcare industry, that NORTON perform those services on Patients who were beneficiaries of

*Presiding Judge: HON. TRACY E. DAVIS (630452)*

*COM : 000019 of 000026*

Filed    26-CI-002831    04/02/2026    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

BCBSMI, thus fulfilling BCBSMI's obligation to secure medically necessary healthcare for its beneficiaries. When Patients received those services, the express insurance coverage agreement made between BCBSMI and Patients was satisfied and BCBSMI was able to retain rightfully the premiums paid on behalf of Patients for enabling Patients to receive the medical care performed by NORTON. Further, NORTON directly conferred a benefit upon BCBSMI when it helped BCBSMI make good on promises BCBSMI made to its own members/beneficiaries that it would arrange for them to receive timely medical care, when necessary, at a first-rate medical facility.

90. NORTON provided medically necessary care to BCBSMI beneficiaries as described above.

91. NORTON properly billed BCBSMI for the medically necessary services provided to Patients as listed in Ex. A.

92. BCBSMI breached the implied-in-fact contract by paying only $76,156.14, resulting in an aggregate underpayment of $374,359.60, per the discounted rates under the Contract, for the medical services performed by NORTON.

93. NORTON performed all conditions required on its part to be performed in accordance with the terms and conditions of the implied-in-fact contract.

94. BCBSMI breached the implied-in-fact contract by underpaying NORTON for the medically necessary services, supplies and/or equipment rendered or supplied to Patients.

95. As a direct and proximate result of BCBSMI's breach of the implied-in-fact contract, NORTON suffered damages in an amount to be proven at trial but not less than the sum of $374,359.60, exclusive of interest.

96. WHEREFORE, NORTON prays this Court enter judgment in its favor and against BCBSMI as follows:

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000020 of 000026

. Filed          26-CI-002831   04/02/2026          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

a)  For the principal sum of $374,359.60;

b)  For interest on such principal sum at the rate of 8% per annum, pursuant to KRS §

360.010; and,

c)  For such other and further relief as the Court deems just and proper.

### COUNT II – QUANTUM MERUIT (IN THE ALTERNATIVE)
(Against Defendant BCBSMI and DOES 1 through 25, inclusive)

97.    NORTON incorporates by reference and re-alleges paragraphs 1-74 of this Complaint here as though set forth in full.

98.    On the dates of service set forth in Ex. A, NORTON provided emergency and/or medically necessary care to Patients.

99.    In the alternative, assuming *arguendo* that it is determined that no express or implied-in-fact contract between BCBSMI and NORTON existed, and/or that such a contract cannot be enforced as to the payment for the medically necessary services, supplies and/or equipment rendered to Patients, Plaintiff should nevertheless be fully paid under the common law doctrine of *quantum meruit.*

100.    NORTON did not perform these services gratuitously. Rather, BCBSMI, by its words and prior and ongoing conduct, and through the custom and practice in the healthcare industry, knew and understood that NORTON rendered such treatment with the expectation of being paid.

101.    Prior to the treatment rendered by NORTON to Patients, through industry custom and practice, BCBSMI impliedly agreed and understood that NORTON would render medically necessary services to BCBSMI beneficiaries, submit bills for such care to BCBSMI, and that BCBSMI would pay the usual and customary value to NORTON for the necessary medical

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000021 of 000026

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

treatment rendered to Patients, rather than Patients themselves (except for co-payments, deductibles, and co-insurance amounts, in any).

102.   Specifically, prior to the dates that NORTON admitted Patients to its facilities for medical services, NORTON contacted BCBSMI to verify Patients' healthcare eligibility under a BCBSMI health plan, to obtain authorization from BCBSMI for the medical services rendered and to be rendered, and to establish its right to be paid by BCBSMI the usual and customary value for such care. In response, BCBSMI represented that Patients were beneficiaries of one of BCBSMI's health plans, provided authorization numbers incorporated herein, and approved admission of Patients.

103.   At no time did BCBSMI represent that it would not pay the usual and customary value to NORTON for the necessary medical treatment rendered to Patients and at no time did NORTON represent that it would perform the services gratuitously.

104.   By treating Patients and initiating contact with BCBSMI as described above, NORTON provided a benefit to BCBSMI and BCBSMI failed to compensate properly NORTON for that received benefit, despite the prior and on-going course of conduct between NORTON and BCBSMI. Prior course of conduct included, among other things:

a)   BCBSMI's issuance of identification cards to Patients;

b)   BCBSMI's instructing Patients to present such identification cards to medical providers so as to give assurances to those medical providers that such care would be paid for;

c)   NORTON communicating with BCBSMI to ask for authorization to render medical care to Patients and BCBSMI issuing authorization to NORTON for treatment for that care;

Filed          26-CI-002831    04/02/2026          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

d) BCBSMI communicating to NORTON the medical eligibility benefits for Patients without advising NORTON that BCBSMI would not make full payment of the usual and customary value of the services to be provided to Patients;

e) BCBSMI sending written approval to NORTON for the specified medical services for Patients;

f) BCBSMI requesting that NORTON send BCBSMI clinical information and medical records.

105.    In addition, prior course of conduct by BCBSMI included NORTON submitting claims to BCBSMI and in response, BCBSMI would properly pay the usual and customary value of those claims. Over the last five (5) years, NORTON have billed numerous claims and BCBSMI has satisfactorily paid on a number of claims submitted by NORTON in the near identical manner and method as the facts alleged herein.

106.    In addition, BCBSMI pre-verified Patients' coverage and eligibility and authorized many of the treatments.

107.    BCBSMI's authorizations for the treatments were implied requests to NORTON to perform those services on behalf of Patients.

108.    NORTON rendered such treatments after the implied requests for such services by BCBSMI and NORTON intended those services to benefit, among others, BCBSMI.

109.    BCBSMI directly and deliberately benefited from those services by prompting, through its words and prior and ongoing conduct, and through the custom and practice in the healthcare industry, that NORTON perform those services on Patients who were beneficiaries of BCBSMI, thus fulfilling BCBSMI's obligation to secure medically necessary healthcare for its beneficiaries. When Patients received those services, the express insurance coverage agreement

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000023 of 000026

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

made between BCBSMI and Patients was satisfied and BCBSMI was able to retain rightfully the premiums paid on behalf of Patients for enabling Patients to receive the medical care performed by NORTON. Further, NORTON directly conferred a benefit upon BCBSMI when it helped BCBSMI make good on promises BCBSMI made to its own members/beneficiaries that it would arrange for them to receive timely medical care, when necessary, at a first-rate medical facility.

110.    NORTON provided medically necessary care to the BCBSMI beneficiaries as described above.

111.    NORTON properly billed BCBSMI for the medically necessary services provided to Patients as listed in Ex. A.

112.    NORTON is informed and believes and alleges thereon that BCBSMI expressly instructed its beneficiaries (including Patients) to seek medical care in an emergency from the nearest medical provider and for such beneficiaries to tell the emergency medical provider to send BCBSMI the bills for such care for payment by BCBSMI (except for co-payments, deductibles and co-insurance amounts, if any).

113.    After NORTON rendered the care specified in Ex. A to Patients, NORTON properly and timely billed BCBSMI for such care.

114.    The reasonable value of the medical care provided was and is the usual and customary charges of those services that is the total billed charges in the bills submitted to BCBSMI by NORTON for $2,463,566.93. BCBSMI paid only $76,156.14, leaving a deficit of $2,387,410.79 owed to NORTON.

115.    Despite demands thereon, BCBSMI has refused to pay fully NORTON for the medical care rendered to Patients as set forth in Exhibit A.

Filed       26-CI-002831    04/02/2026          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

116.    NORTON did not perform these services gratuitously, but rather expected to be paid the reasonable and customary value for such services which amounts to $2,463,566.93.

117.    BCBSMI unjustly benefitted by not paying fully NORTON for the reasonable value of such services. BCBSMI promised its beneficiaries (including Patients) that it would pay medical providers who provided emergency and necessary medical treatment to those beneficiaries in exchange for Patients' premiums, collected such premiums and then refused despite demands to fully and properly pay NORTON the reasonable and customary value of the medical care rendered to BCBSMI's beneficiaries as specified in Ex. A. BCBSMI accepted the services NORTON provided to Patients as demonstrated by acts including but not exclusive to issuing authorizations and collection of premiums.

118.    As a direct and proximate result of BCBSMI's misconduct, NORTON has suffered damages in an amount to be proven at trial but not less than the sum of $2,387,410.79, exclusive of interest.

119.    WHEREFORE, NORTON prays this Court enter judgment in its favor and against BCBSMI as follows:

a)    For the principal sum of $2,387,410.79;

b)    For interest on such principal sum at the rate of 8% per annum, pursuant to KRS § 360.010; and,

c)    For such other and further relief as the Court deems just and proper.

Dated:  April 2, 2026

Respectfully submitted,

LAW OFFICES OF STEPHENSON,
ACQUISTO & COLMAN, INC.

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000025 of 000026

Filed          26-CI-002831    04/02/2026          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
04/06/2026 12:22:57 PM
LKLICHTENBERGER@GMAIL.C

By:     */s/ Lauren K. Miller*
One of the Attorneys for Plaintiff


Marcus R. Morrow, Esq., KY Bar No. 99194
Lauren K. Miller, Esq., KY Bar No. 101299
LAW OFFICES OF STEPHENSON, ACQUISTO & COLMAN, INC.
20 N. Clark St., Suite 3300
Chicago, IL 60602
Phone: (312)-626-1870
Fax: (818)-559-5484
mmorrow@sacfirm.com (cc: lbencomo@sacfirm.com)
lmiller@sacfirm.com (cc: sboyd@sacfirm.com)

Presiding Judge: HON. TRACY E. DAVIS (630452)

COM : 000026 of 000026

| AOC-E-105    Sum Code: CI<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice    *Courts.ky.gov*<br><br>CR 4.02; Cr Official Form 1 | <br><br>**CIVIL SUMMONS** | NOT ORIGINAL DOCUMENT<br>Case #: 26-CI-002831<br>04/06/2026 12:26:07 PM<br>Court: CIRCUIT<br>LKLICHTENBERGER@GMAIL.C<br>County: JEFFERSON Circuit |

*Plaintiff,* **NORTON HEALTHCARE, INC. VS. BLUE CROSS BLUE SHIELD OF MICHIG,** *Defendant*

TO: **BLUE CROSS BLUE SHIELD OF MICHIGAN MUTUAL**

 **600 LAFAYETTE EAST, SUITE 1929**

 **DETROIT, MI 48226**

The Commonwealth of Kentucky to Defendant:

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*David L. Nicholson*

Jefferson Circuit Clerk
Date: **4/2/2026**

*Presiding Judge: HON. TRACY E. DAVIS (630452)*

---

### Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

 To: _____

☐ Not Served because: _____

Date: _____, 20_____

Served By _____

Title _____

*CI : 000001 of 000001*

Summons ID: @00001143445
CIRCUIT: 26-CI-002831 Return to Filer for Service
NORTON HEALTHCARE, INC. VS. BLUE CROSS BLUE SHIELD OF MICHIG



Page 1 of 1



NORTON V. BLUE CROSS BLUE SHIELD OF MICHIGAN

NOT ORIGINAL DOCUMENT
04/06/2026 12:25:38 PM
LKLICHTENBERGER@GMAIL.COM

FC 44170

| No. | Admission/Begin Date | Discharge Date | Total Charges | Total Paid | Underpaid per Implied in-Fact | Underpaid per Quantum Meruit |
|-----|---------------------|----------------|---------------|------------|-------------------------------|------------------------------|
| 1 | 3/1/2024 | 3/1/2024 | $ 61,664.25 | $ 2,905.26 | $ 12,408.88 | $ 58,758.99 |
| 2 | 3/22/2024 | 3/22/2024 | $ 61,695.17 | $ 2,907.20 | $ 12,408.88 | $ 58,787.97 |
| 3 | 7/3/2024 | 7/3/2024 | $ 59,660.28 | $ 2,550.67 | $ 12,408.88 | $ 57,109.61 |
| 4 | 5/8/2023 | 5/8/2023 | $ 41,046.55 | $ 595.43 | $ 9,022.75 | $ 40,451.12 |
| 5 | 1/30/2025 | 1/30/2025 | $ 59,060.06 | $ 346.49 | $ 13,041.59 | $ 58,713.57 |
| 6 | 1/8/2025 | 1/8/2025 | $ 62,452.86 | $ - | $ 13,041.60 | $ 62,452.86 |
| 7 | 9/3/2024 | 9/3/2024 | $ 57,077.30 | $ 1,245.72 | $ 12,408.88 | $ 55,831.58 |
| 8 | 5/22/2024 | 5/22/2024 | $ 48,445.40 | $ 1,658.34 | $ 8,816.96 | $ 46,787.06 |
| 9 | 6/5/2024 | 6/5/2024 | $ 47,812.40 | $ 1,379.25 | $ 8,816.96 | $ 46,433.15 |
| 10 | 6/26/2024 | 6/26/2024 | $ 67,294.19 | $ 4,413.04 | $ 3,322.64 | $ 62,881.15 |
| 11 | 5/1/2024 | 5/1/2024 | $ 67,853.95 | $ 4,658.56 | $ 3,322.64 | $ 63,195.39 |
| 12 | 7/25/2024 | 7/25/2024 | $ 67,842.56 | $ - | $ 909.36 | $ 67,842.56 |
| 13 | 5/29/2024 | 5/29/2024 | $ 67,298.94 | $ 4,407.91 | $ 3,322.64 | $ 62,891.03 |
| 14 | 4/3/2024 | 4/3/2024 | $ 69,118.37 | $ 2,130.83 | $ 3,322.64 | $ 66,987.54 |
| 15 | 7/9/2024 | 7/9/2024 | $ 27,816.78 | $ 819.68 | $ 3,060.33 | $ 26,997.10 |
| 16 | 3/4/2024 | 3/4/2024 | $ 19,716.40 | $ 1,503.38 | $ 765.21 | $ 18,213.02 |
| 17 | 1/8/2024 | 1/8/2024 | $ 10,426.08 | $ 1,599.48 | $ 327.95 | $ 8,826.60 |
| 18 | 1/22/2024 | 1/22/2024 | $ 10,240.31 | $ 1,504.26 | $ 327.95 | $ 8,736.05 |
| 19 | 2/5/2024 | 2/5/2024 | $ 19,716.40 | $ 1,503.38 | $ 765.21 | $ 18,213.02 |
| 20 | 4/22/2024 | 4/22/2024 | $ 35,378.18 | $ 1,482.16 | $ 1,530.41 | $ 33,896.02 |
| 21 | 8/1/2024 | 8/1/2024 | $ 93,451.42 | $ 3,189.35 | $ 12,614.20 | $ 90,262.07 |
| 22 | 6/13/2024 | 6/13/2024 | $ 92,601.72 | $ 3,892.79 | $ 12,408.88 | $ 88,708.93 |
| 23 | 7/11/2024 | 7/11/2024 | $ 93,713.79 | $ 31.45 | $ 12,614.20 | $ 93,682.34 |
| 24 | 8/22/2024 | 8/22/2024 | $ 90,196.15 | $ 1,355.42 | $ 12,614.20 | $ 88,840.73 |
| 25 | 4/18/2024 | 4/18/2024 | $ 61,279.03 | $ 2,462.58 | $ 12,408.88 | $ 58,816.45 |
| 26 | 5/16/2024 | 5/16/2024 | $ 62,103.42 | $ 2,462.58 | $ 12,408.88 | $ 59,640.84 |
| 27 | 4/3/2024 | 4/3/2024 | $ 45,438.62 | $ 24.84 | $ 6,471.12 | $ 45,413.78 |
| 28 | 5/29/2024 | 5/29/2024 | $ 45,438.62 | $ 31.45 | $ 6,471.12 | $ 45,407.17 |
| 29 | 3/6/2024 | 3/6/2024 | $ 45,438.62 | $ 24.84 | $ 6,471.12 | $ 45,413.78 |
| 30 | 6/26/2024 | 6/26/2024 | $ 45,438.62 | $ 24.84 | $ 6,471.12 | $ 45,413.78 |
| 31 | 5/1/2024 | 5/1/2024 | $ 45,438.62 | $ 24.84 | $ 6,471.12 | $ 45,413.78 |
| 32 | 5/12/2024 | 5/21/2024 | $ 110,221.93 | $ 5,774.94 | $ 12,408.88 | $ 104,446.99 |

Presiding Judge: HON. TRACY E. DAVIS (630452)

EXH : 000001 of 000002

| # | Date | Filed | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 33 | 7/9/2024 | 7/9/2024 | $ | 60,263.10 | $ | 1,013.18 | $ | 12,408.88 | $ | 59,249.92 |
| 34 | 4/30/2024 | 4/30/2024 | $ | 94,838.37 | $ | 2,191.72 | $ | 12,408.88 | $ | 92,646.65 |
| 35 | 3/19/2024 | 3/19/2024 | $ | 77,880.31 | $ | 6,500.52 | $ | 12,408.88 | $ | 71,379.79 |
| 36 | 4/9/2024 | 4/9/2024 | $ | 63,222.83 | $ | 1,809.98 | $ | 12,408.88 | $ | 61,412.85 |
| 37 | 6/18/2024 | 6/18/2024 | $ | 60,160.74 | $ | 1,171.29 | $ | 12,614.20 | $ | 58,989.45 |
| 38 | 7/10/2024 | 7/10/2024 | $ | 63,888.31 | $ | 1,939.70 | $ | 13,476.78 | $ | 61,948.61 |
| 39 | 10/9/2024 | 10/9/2024 | $ | 58,163.32 | $ | 345.03 | $ | 13,671.48 | $ | 57,818.29 |
| 40 | 6/19/2024 | 6/19/2024 | $ | 63,818.38 | $ | 1,932.71 | $ | 13,476.78 | $ | 61,885.67 |
| 41 | 9/11/2024 | 9/11/2024 | $ | 58,163.32 | $ | 349.19 | $ | 13,671.48 | $ | 57,814.13 |
| 42 | 7/31/2024 | 7/31/2024 | $ | 63,892.68 | $ | 1,948.78 | $ | 13,671.48 | $ | 61,943.90 |
| 43 | 6/18/2024 | 6/18/2024 | $ | 6,898.58 | $ | 43.08 | $ | 955.80 | $ | 6,855.50 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| $ | 2,463,566.93 | $ | 76,156.14 | $ | 374,359.60 | $ | 2,387,410.79 |

ORIGINAL DOCUMENT
06/2026 12:53:79 M
LICHTENSTEINR@GMAIL.COM

Presiding Judge: HON. TRACY E. DAVIS (630452)

EXH : 000002 of 000002